UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JAY PATTON, )
 )
    *Plaintiff*, )
 )
v. ) No.: 3:07-cv-456
 ) (VARLAN/GUYTON)
ROSCOE BYRD, et al., )
 )
    *Defendants*. )

## MEMORANDUM

This is a *pro se* prisoner's civil rights action pursuant to 42 U.S.C. § 1983. The matter is before the Court on the plaintiff's motion to amend the complaint, plaintiff's motion for summary judgment, defendants' response thereto, the motion to dismiss or for summary judgment filed by the defendants[1], and plaintiff's response thereto. In his motion to amend the complaint, plaintiff seeks to clarify the new positions of two defendants and his motion [Doc. 109] will be **GRANTED** to that extent. For the following reasons, plaintiff's motion for summary judgment [Doc. 111] will be **DENIED** and defendants' motion for summary judgment [Doc. 115] will be **GRANTED**. All other pending motions will be **DENIED** as **MOOT**.

---

[1]The Court previously granted the motion for summary judgment filed by defendant Ronald D. Higgs, M.D., as to plaintiff's claim that he was denied medical care by Dr. Higgs.

I.      Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." "In considering a motion for summary judgment, the court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). *See also Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *Securities and Exchange Commission v. Blavin*, 760 F.2d 706, 710 (6th Cir. 1985). The burden is on the moving party to conclusively show that no genuine issue of material fact exists. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979).

> Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial a reasonable jury could return a verdict for the non-moving party. *Id.* 106 S.Ct. at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

*60 Ivy Street Corp. v. Alexander*, 822 F.2d at 1435-36.

Once the moving party presents evidence sufficient to support a motion for summary judgment, the non-moving party is not entitled to a trial merely on the basis of allegations.

The non-moving party must present some significant probative evidence to support its position. *White v. Turfway Park Racing Association, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990); *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 861 (6th Cir. 1986). Mere allegations of a cause of action will no longer suffice to get a plaintiff's case to the jury. *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir. 1989).

Summary judgment should not be disfavored and may be an appropriate avenue for the "just, speedy and inexpensive determination" of an action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The moving party is entitled to judgment as a matter of law "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.

II.  Factual Background

Plaintiff is in the custody of the Tennessee Department of Correction (TDOC) and confined in the Morgan County Correctional Complex (MCCX); he brought this action during his confinement at the Brushy Mountain Correctional Complex (BMCX), which has since been closed. The defendants are Roscoe Byrd, Freddie Seavers, Steven Cantrell, Gary Hamby, Larry Ward, Doug Cook, Greg Wilson, Kevin Peddicord, Gary Murray, James Worthington, Alan Jones, Erwin Busch, Randy Pressley, Vicky Taylor, Hobart Strong, John Walz, Tom Puccio, Justin Hamby, George Ellis.

Plaintiff's original complaint is 41 pages long. [Doc. 3]. Although lengthy, the complaint is essentially based upon an incident that occurred on December 4, 2006. On that date, plaintiff alleges he was physically and sexually assaulted by correctional officers and then denied medical care for his injuries. Plaintiff alleges the incident was the result of a confrontation he had three days earlier with defendant Justin Hamby. He also alleges his right to due process was violated as a result of disciplinary proceedings, and he challenges the conditions of his confinement in punitive segregation.

The incident began when a team of correctional officers arrived at plaintiff's cell to search it. Plaintiff alleges he refused to allow his cell to be searched because the defendants failed to tell him the reason for the search; a cell extraction team was then called and plaintiff was removed from his cell. The team consisted of defendants Byrd, Seavers, Ward, Jones, Busch, Pressley, Taylor, and Strong. Plaintiff alleges he was beaten by the defendants, was choked by defendant Seavers for approximately 15 to 25 minutes until he blacked out, was cut with a pocket knife by defendant Seavers, was electrocuted continuously by the electric riot shield carried by defendant Byrd for approximately 15 to 20 minutes, and finally thrown face-down on the rough concrete cell floor. According to plaintiff, he did not resist the officers or threaten them in any way. Plaintiff alleges that defendant Cantrell, who was the unit manager, and defendant Gary Hamby observed the assault without intervening to protect plaintiff. Plaintiff also alleges that Doug Cook, the chief of security, and Greg Wilson were not present to observe the cell extraction.

Plaintiff alleges that after he was cuffed he was taken to the clinic triage area. Although he told defendant Puccio, the triage nurse, that his left thumb and left ankle were injured, the nurse stated to the correctional officers that plaintiff was not injured and to take him back to punitive segregation. Plaintiff claims he was then placed in an "anger management" holding cell where all his clothing was removed, and that he was not given toilet paper or cleaning supplies, adequate food, nor was he allowed to shower. He also claims that defendants made offensive sexual overtures to him while he was nude. Plaintiff states that correctional officer Michelle Heidle recorded the entire episode, including the sexual assault, on videotape with a video camera.

Plaintiff further alleges that the next day he was again taken to the triage area by defendants Peddicord, Murray, and Seavers, where blood was drawn by defendant Puccio for an HIV test. Plaintiff alleges that the defendants made sexually suggestive remarks to him when he kneeled down to get shackled. He also alleges that on the way back to punitive segregation he was physically assaulted by defendant Seavers, and that defendants Peddicord and Murray failed to intervene and stop the assault.

Later that day, plaintiff was served with five disciplinary infractions. He alleges he was not given adequate notice of the charges nor did defendant Ellis, the hearing officer, allow plaintiff to call a witness at the disciplinary hearing. Plaintiff also alleges that defendants Worthington, the warden of BMCX, and Walz were notified of the abusive conduct of the correctional officers but refused to take disciplinary action against them.

5

In support of their motion for summary judgment, the defendants have filed the affidavits of defendants Cantrell, Hamby, Peddicord, and Seavers, as well as portions of plaintiff's medical records and relevant TDOC policy. [Doc. 118, Notice of Filing].

Defendant Cantrell testifies that at all times relevant to this action he was employed by the TDOC as a Unit Manager at BMCX. [*Id.*, Attachment 1, Affidavit of Stephen Cantrell, p. 1]. Defendant Cantrell testifies that plaintiff has been classified as a maximum security inmate continuously since 2003, and that during plaintiff's time in prison he has been charged with 81 separate disciplinary infractions, "including twelve charges of assaulting staff or other inmates, seven charges of making threats against prison employees, possession of a deadly weapon, and dozens of charges for refusing direct orders from prison employees." [*Id.* at 2].

Defendant Cantrell testifies that throughout the day on December 4, 2006, plaintiff had exhibited violent behavior toward prison staff, was belligerent, and was kicking his cell door. [*Id.*]. When correctional officers attempted to search plaintiff's cell, he refused to back up to the pie flap in the cell door so his hands and feet could be restrained, as required by TDOC policy for a maximum security inmate. [*Id.* at 2-3]. Defendant Cantrell testifies that he personally gave plaintiff at least two verbal orders to submit to restraints, which plaintiff refused. Defendant Cantrell then asked the Warden for permission to use force, by way of an extraction team, to remove plaintiff from his cell, and the Warden approved. [*Id.* at 3].

6

Defendant Cantrell testifies that when the extraction team entered plaintiff's cell, plaintiff threw a container full of feces and urine on the team and the female officer who was videotaping the extraction. [*Id*. at 4]. Because plaintiff continued to resist being restrained, the officers applied two five-second bursts with the Nova shield. [*Id*.] Defendant Cantrell witnessed the entire use of force and testifies that it was the least amount of force necessary to restrain plaintiff, was executed in a professional manner, and was done in accordance with all TDOC policies and procedures. [*Id*.].

According to defendant Cantrell, pursuant to prison policy, whenever physical force is used on an inmate, the inmate is taken to triage for an evaluation. [*Id*. at 5]. Plaintiff's stay in triage was brief because plaintiff did not complain of any injury. [*Id*.].

Plaintiff was then taken to a behavior management cell, where his clothing was removed and he was given a paper gown with which to cover himself. [*Id*.]. Defendant Cantrell testifies that there were no remarks of a sexual nature made to plaintiff at any time nor was plaintiff sexually assaulted. [*Id*.] The purpose of the behavior management cell is to deprive an inmate of all his property, which he earns back one item at a time after he calms down; depending on the level and duration of his hostility, an inmate's stay in the behavior management cell can last from a few hours to a few days. [*Id*. at 5-6].

Defendant Seavers testifies that at all times relevant to this action he was employed by the TDOC as a correctional officer at BMCX. [Doc. 118, Notice of Filing, Attachment 2, Affidavit of Freddie Seavers, p. 1]. Defendant Seavers was a member of the cell

extraction team that removed plaintiff from his cell on December 4, 2006. [*Id.* at 2]. Defendant Seavers denies assaulting plaintiff in any way, denies cutting him with a pocket knife, and denies choking him. [*Id.*]. Defendant Seavers also denies making comments of a sexual nature to plaintiff and testifies that he did not hear any member of the extraction team make such comments. [*Id.*]. Defendant Seavers further testifies that plaintiff threw a cup of urine and fecal matter on the extraction team when they entered his cell and that plaintiff vigorously resisted being restrained. [*Id.* at 2-3].

Defendant Justin Hamby testifies that at all times relevant to this action he was employed by the TDOC as a correctional officer at BMCX. [Doc. 118, Notice of Filing, Attachment 3, Affidavit of Justin Hamby, p. 1]. Defendant Hamby testifies that on December 2, 2006, while attempting to serve plaintiff his food, plaintiff threw urine and feces on a cart full of food trays. [*Id.* at 2]. Plaintiff was charged with assault of staff and destroying state property. [*Id.*].

Defendant Peddicord testifies that at all times relevant to this action he was employed by the TDOC as a High Security Floor Corporal at BMCX. [Doc. 118, Notice of Filing, Attachment 4, Affidavit of Kevin Peddicord, p. 1]. Defendant Peddicord testifies that on December 5, 2006, he escorted plaintiff to the High Security triage room to see the nurse. [*Id.* at 2]. Defendant Peddicord testifies that no sexual comments were made to plaintiff at the time, that plaintiff was examined by a nurse and no injuries were reported or found, and

that plaintiff was escorted back to his cell without incident. [*Id*.]. Defendant Peddicord testifies that no force whatsoever was used against plaintiff that day.

Jennifer L. Brenner, the Assistant Attorney General who represents the defendants, has filed her affidavit with respect to plaintiff's medical records. [Doc. 118, Notice of Filing, Attachment 5, Affidavit of Jennifer L. Brenner]. Ms. Brenner testifies that she requested a certified copy of plaintiff's medical records from November 15, 2006, to April 7, 2010. [*Id*. at 1]. After conducting a thorough review of the entire record, she found seven pages that are relevant to this action and she has filed those pages in support of the motion to dismiss or for summary judgment. [*Id*. at 1-2]. Ms. Brenner testifies that the remaining records are not relevant to this action and do not mention any injury or incident related to plaintiff's cell extraction. [*Id*. at 2].

The seven pages of plaintiff's medical records have been filed. [Doc. 118, Notice of Filing, Attachment 6]. The records show that on December 4, 2006, plaintiff was seen by defendant Puccio as a result of the cell extraction; defendant Puccio noted that plaintiff had voiced no complaint. [*Id*. at 8, Accident/Incident/Traumatic Injury Report]. The progress record for plaintiff also noted that he denied having any injury after the cell extraction. [*Id*. at 7, Problem Oriented - Progress Record]. On December 4, 2006, Dr. Higgs ordered that blood be drawn from plaintiff for HIV and Hepatitis testing as a result of officers being exposed to plaintiff's body fluids. [*Id*. at 3, Physician's Orders].

On May 29, 2007, plaintiff complained of a sore left thumb; he was instructed to not overwork his left hand and allow it to rest, and to contact the nurse if the problem continued. [*Id*. at 6, Problem Oriented - Progress Record]. On June 5, 2007, plaintiff again complained of a sore left thumb. [*Id*.]. June 7, 2007, Dr. Higgs ordered an x-ray of plaintiff's left thumb. [*Id*. at 3, Physician's Orders]. The x-ray was taken on June 13, 2007, and no evidence of fracture or dislocation was found. [*Id*. at 2, Radiologist's Report].

The defendants have also manually filed a compact disk recording of the cell extraction of plaintiff on December 4, 2006. [Doc. 114, Notice of Manual Filing]. The Court has reviewed the videotaped recording. The video lasts for eight minutes, 40 seconds, from the entry of the cell extraction team into plaintiff's cell until the exit of the team from the behavior management cell.

The video completely controverts plaintiff's allegations of what occurred during the extraction and corroborates the testimony of defendants Cantrell and Seavers. The video shows plaintiff resisting the officers' efforts to restrain him, with one or more of the officers repeatedly instructing plaintiff to stop resisting. It does not show plaintiff being beaten, choked, continuously electrocuted, or thrown on the cell floor. Once plaintiff was fully restrained, he was carried by the officers to the triage area for a brief examination and then to the behavior management cell. The video shows the officers removing plaintiff's clothing in the behavior management cell, but there are no comments of a sexual or other threatening nature.

10

III.   Discussion

*A. Use of Force*

The Eighth Amendment protects prisoners against the imposition of "cruel and unusual punishment." However, "not every intrusion upon a prisoner's bodily integrity will rise to the level of an Eighth Amendment violation." *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986).

> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."

*Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).

Although a "good faith use of physical force in pursuit of valid penological or institutional goals will rarely, if ever, violate the Eighth Amendment", *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986), "[a]n express intent to inflict unnecessary pain is not required" to find such a violation. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Whether a prison guard's use of force violates the Eighth Amendment depends on "whether the measure taken inflicted unnecessary and wanton pain and suffering" which "ultimately turns on 'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Id*. at 320-21 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). *See also Haynes v. Marshall*, 887 F.2d 700, 703 (6th Cir. 1989).

In evaluating an Eighth Amendment claim, "the reason or motivation for the conduct, the type and excessiveness of the force used, and the extent of injury inflicted should be considered." *Parrish v. Johnson*, 800 F.2d at 605. *Accord, Caldwell v. Moore*, 968 F.2d 595, 600 (6th Cir. 1992) ("courts should consider the reasons or motivation for the conduct, the type and extent of force applied, and the extent of inflicted injury").

The defendants aver that the force used against plaintiff was the minimum force necessary to maintain order and to control plaintiff's violent behavior, and thus did not violate plaintiff's constitutional rights. In his response to the defendants' motion for summary judgment, plaintiff reiterates his claims of assault and excessive force, and contends that the defendants' affidavits are nothing but falsehoods. [Doc. 122, Affidavit of Jay Patton, pp. 1-4; Doc. 124, Plaintiff's Opposition to Defendants' Memorandum in Support of Defendants' Motion to Dismiss or for Summary Judgment, pp. 1-17]. As noted, however, the videotaped recording of the cell extraction controverts plaintiff's allegations and corroborates the defendants' testimony. There is nothing in the record, other than plaintiff's self-serving allegations, to support his claim that he was assaulted by the defendants on December 4, 2006.

When considering a motion to summary judgment, the court must view the facts in the light most favorable to the nonmoving party only if there is a "genuine" dispute regarding those facts. Fed. R. Civ. P. 56(c). Given the videotaped recording of the cell extraction,

however, the Court does not have to adopt plaintiff's allegations for summary judgment purposes.

> When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.
>
> That was the case here with regard to the factual issue whether respondent was driving in such fashion as to endanger human life. Respondent's version of events is so utterly discredited by the record that no reasonable jury could have believed him. The Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape.

*Scott v. Harris*, 550 U.S. 372, 380-81 (2007). *See also Chappell v. City of Cleveland*, 585 F.3d 901, 906 (6th Cir. 2009) ("the court is not obliged to, and indeed should not, rely on the nonmovant's version where it is 'so utterly discredited by the record' as to be rendered a 'visible fiction'") (quoting *Scott v. Harris*, 550 U.S. at 380-81).

Plaintiff's allegation that he was assaulted during the cell extraction are utterly discredited by the record. In addition, because plaintiff's allegations of excessive force on December 4, 2006, are wholly discredited by the videotaped recording, the Court finds that plaintiff's allegations of an assault by defendant Seavers the following day lack credibility. The Court credits the testimony of defendant Peddicord that plaintiff was escorted to and from triage on December 5, 2006, without incident and that no force was used against plaintiff on that day. The Court likewise finds that plaintiff's allegation of sexual assault also lack merit.

Based upon the foregoing, the Court finds that plaintiff has failed to support his claims that he was subjected to the use of excessive force or sexual assault. The defendants are therefore entitled to judgment as a matter of law on this claim.

*B. Medical Care*

The Eighth Amendment's ban against cruel and unusual punishment obliges prison authorities to provide medical care for prisoners' serious medical needs. In order to state a claim under § 1983 in the medical context, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Thus, under the Estelle standard, "[a] constitutional claim for denial of medical care has objective and subjective components." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004).

The objective component requires an inmate to establish that he is suffering from a sufficiently serious medical need, such that "'he is incarcerated under conditions posing a substantial risk of serious harm.'" *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The subjective component necessitates an inmate show that a prison official possessed a culpable state of mind. *Id*. "A defendant possess[es] a sufficiently culpable state of mind when he acts with deliberate indifference." *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005) (citation omitted). "Put simply, 'deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.'" *Johnson v. Karnes*, 398 F.3d 868, 875 (6th Cir.2005) (quoting *Farmer v. Brennan*, 511 U.S. at 836).

Plaintiff alleges he was denied medical care for the injuries he received during the cell extraction. In his original complaint, plaintiff claimed that "[a]fter suffering in silence" for six months, he submitted a sick call request concerning pain in his left thumb and left ankle which had not healed after the alleged assault. [Doc. 3, Complaint, p. 29]. Plaintiff's medical records, however, contradict his allegations. As stated earlier, defendant Puccio noted during his examination of plaintiff after the cell extraction that plaintiff had voiced no complaint of injury. It was not until May, 2007, that plaintiff complained of a sore thumb. Dr. Higgs eventually ordered an x-ray of the thumb, which revealed no fracture or dislocation.

Plaintiff alleges that the defendants should have had him transported to Meharry Medical University Hospital in Nashville, Tennessee, and should have scheduled appointments with a neurologist and physical therapist for treatment of his injuries. "Deliberate indifference to serious medical needs" is distinguishable from an inadvertent failure to provide adequate medical care.

> Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

*Estelle*, 429 U.S. at 106. *See also Gibson v. Matthews*, 926 F.2d 532, 536-37 (6th Cir. 1991) (negligence of medical personnel does not state a claim under § 1983 for deliberate indifference to medical needs); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy

of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."). Based upon the record, plaintiff has failed to demonstrate that he suffers from a serious medical injury or that the defendants were deliberately indifferent to his medical needs. The defendants are entitled to judgment as a matter of law on plaintiff's claim that he was denied medical care.

## C. Conditions of Confinement

Conditions of confinement that are cruel and unusual are included in the Eighth Amendment's prohibition of cruel and unusual punishment. Although there is no test by which a court can determine whether conditions of confinement are cruel and unusual, a court must consider whether the conditions involve an "unnecessary and wanton infliction of pain". *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). Nevertheless, conditions of confinement may be "restrictive and even harsh" and yet not violate the constitution. *Id*. at 347.

The length of time that an inmate is subjected to certain conditions of confinement is relevant in determining whether the confinement meets constitutional standards. *See Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) ("A filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months."); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) ("allegations of two days of discomfort are not sufficient to state a claim of constitutional dimension").

> It is clear that an inmate may challenge the conditions of his confinement as violative of the Eighth Amendment's prohibition against cruel and unusual punishment. One challenging his conditions of confinement on

> this basis must satisfy a two-part inquiry. The first part is objective, that is, the inmate must demonstrate that he has been subjected to specific deprivations so serious as to deny him the minimal civilized measure of life's necessities. Complains of routine, as opposed to extreme, discomforts will not state a claim under this test as routine discomfort is accepted as part of the penalty that a criminal must pay. Neither will a prisoner be heard in this context if his complaint is based on a number of totality of conditions of confinement unless those conditions, in combination, have a "mutually enforcing effect" that in fact produces the aforementioned deprivation of an identifiable human need. The second part of the test is subjective. The inmate must show that the prison officials had a culpable state of mind. Liability cannot be predicated on negligence alone; the inmate must demonstrate that prison officials acted with wantonness or deliberate indifference to his constitutionally protected needs.

*Barajas v. Michigan Department of Corrections*, No. 93-1512, 1994 WL 88827 at *2 (6th Cir. March 17, 1994) (unpublished decision), (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) (internal citations omitted).

Plaintiff alleges he that when he was placed in the behavior management cell all his clothing was removed, and that he was not given toilet paper or cleaning supplies, adequate food, nor was he allowed to shower. Defendant Cantrell testifies that when plaintiff was placed in the behavior management cell, his clothes were removed and he was given a paper gown with which to cover himself. [Doc. 188, Attachment 1, p. 5]. According to defendant Cantrell, the purpose of the behavior management cell is to deprive an inmate of all his property, which he earns back as he calms downs. [*Id*.]. Defendant Cantrell testifies that he did not order any officer to withhold food from plaintiff and, to his knowledge, that was not done. [*Id*. at 6]. Defendant Justin Hamby testifies that he never refused to serve plaintiff food. [Doc. 118, Attachment 3, p. 2].

The Court accredits the testimony of defendants Cantrell and Hamby. Plaintiff's placement in a behavior management cell did not violate his right against cruel and unusual punishment, and the defendants are entitled to judgment as a matter of law on this claim.

### D. *Disciplinary Infractions*

Plaintiff alleges he was denied due process when he was convicted of the disciplinary infractions and when the warden refused to overturn the convictions. The documents attached as exhibits to plaintiff's original complaint reveal that plaintiff received notice of the disciplinary infractions and unsuccessfully appealed his convictions to Warden Worthington. The Court finds that plaintiff's due process rights were not violated by his disciplinary convictions. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

## IV. Conclusion

Plaintiff's motion to amend his complaint will be **GRANTED**. The defendants are entitled to judgment as a matter of law and their motion for summary judgment will be **GRANTED**. The plaintiff's motion for summary judgment will be **DENIED**. This action will be **DISMISSED WITH PREJUDICE**. All other pending motions will be **DENIED** as **MOOT**. The Court will **CERTIFY** that any appeal from this action would not be taken in good faith and would be totally frivolous. *See* Rule 24 of the Federal Rules of Appellate Procedure.

**AN APPROPRIATE ORDER WILL ENTER.**

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE